**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROGER EDWARDS,

    Plaintiff,

vs.                                                CASE NO. 3:04-cv-689-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER & OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income disability payments (SSI). 42 U.S.C. § 405(g). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #19, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #21, D's Brief). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated November 23, 2004 (Doc. #13). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **AFFIRMED**.

**PROCEDURAL HISTORY**

Plaintiff Roger Edwards filed applications for SSI and DIB on June 1, 2002 (Tr. 62-64, 220-24). Plaintiff's initial application was denied, as was his request for reconsideration. Plaintiff timely requested a hearing before an administrative law judge (ALJ) and the hearing took place on January 15, 2004 before ALJ Ronald C. Dickinson (Tr. 234-86). Plaintiff appeared and testified at the hearing, as did vocational expert David Jackson. Plaintiff was represented by attorney Charles Steinberg during the underlying administrative phase of this case (Tr. 234). At the start of the administrative hearing, Plaintiff amended his alleged onset date of disability to October 28, 2001 (Tr. 239). The ALJ issued an unfavorable decision on April 29, 2004 (Tr. 15-29). The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner (5-7). Attorney Dorothy Clay Sims filed the instant action in Federal Court on August 10, 2004 (Doc. #1, Complaint). Attorney Chantal Harrington entered an appearance on behalf of Plaintiff on March 16, 2005 and filed Plaintiff's Brief the same day (*see* Docs. #18 & #19).

**STATEMENT OF THE FACTS**

Plaintiff Roger Edwards was born on March 12, 1958 (Tr. 240). He was forty-five years old at the time of the administrative hearing (Tr. 241). Plaintiff has a high school education and previous work experience as a sign installer, field foreman and truck driver (Tr 242, 79). Plaintiff testified that approximately nineteen years ago he suffered a forty foot fall, in which his right elbow was crushed and his hips joints were bruised and he suffered a concussion (Tr. 254-55). Plaintiff said he began having back problems about

a year later, but continued to work until the pain in his back became so severe he had to stop working (Tr. 255).  In the Adult Disability Report, Plaintiff alleges disability due to neck, shoulder, arm and lower back pain, and due to headaches (Tr. 66).  Plaintiff has been diagnosed with "chronic neck and back pain due to degenerative disc disease, osteoarthritis, myofascial pain, severe headaches and depression," which the ALJ found to be severe impairments  (Tr. 23).  An MRI performed in February 2002 revealed:

> ...focal protrusions of disc material which appear to be covered by osteophytes at the C3-4, C4-5, and C6-7 levels.  The spinal cord appear[ed] deformed on the left at the C6-7 level due to the eccentric bulging of disc material and development of osteophytes in the left lateral recess.  Neuroforaminal stenosis also appears to be present on the left at C6- with likely compromise of the left C7 nerve root.  Osseous hypertrophy of the uncoverteberal joints is eccentrically greater on the right at the C4-5 level with slight apparent deformity of the cord and neuroforaminal stenosis on the right at C4-5 which may compromise the right C5 nerve root.  The central focal disc protrusion at the C3-4 level results in less of an impression upon the cervical spinal cord, without neuroforaminal stenosis.  This is the focal protrusion which most likely appears to represent an acute herniation, although even this disc protrusion may be associated with osteophytes.  Spinal stenosis is not evident.  Focal signal changes are not evident within the cervical spinal cord.   (Tr. 98).

Plaintiff has also been diagnosed with hypertension, hyperlipidemia and chest pains, which the ALJ found were not severe impairments (Tr. 23).

Plaintiff testified that he has pain all the time in his back that radiates up and down his arms (Tr. 249).  He complained that there is throbbing all the time and the pain makes his arms and legs go numb (Tr. 250).  Plaintiff also stated he experiences constant headaches, has ringing in his ears, and chest pains that make breathing difficult. (Tr. 249-250, 258).  Plaintiff testified that he can sit for fifteen or twenty minutes but has to alternate between sitting and standing to alleviate his pain (Tr. 215-252, 255, 259).  At the hearing, Plaintiff asked to stand up from a seated position during the course of his testimony (Tr.

245).

Plaintiff testified that he attempted vocational rehabilitation through the Florida Division of Vocational Rehabilitation, but was unable to attend classes because he could not sit long enough to take the tests and complete the schooling (Tr. 261). Plaintiff also briefly attended truck driving school, but was unable to complete the courses because pain and medications prevented him from driving (Tr. 248, 256-57). Plaintiff testified he spends his days walking and sitting around in his house, and he does "a lot of dozing off and laying down" (Tr. 255). He also cares for his three-year-old son, who takes naps with Plaintiff throughout the day (Tr. 256).

## SOCIAL SECURITY ACT ELIGIBILITY AND THE STANDARD OF REVIEW

Plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 42 U.S.C.§ 416(i), 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905.[1] The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2006 edition.

applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2006). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he or she has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*,

703 F.2d 1233 (11th Cir. 1983).

## ANALYSIS

Plaintiff alleges three sources of error in the ALJ's decision: (1) the ALJ erred in determining Plaintiff's Residual Functional Capacity (RFC); (2) the ALJ failed to articulate adequate reasons for discrediting Plaintiff's treating physicians; and, (3) the ALJ relied on vocational expert testimony that conflicted with the Dictionary of Occupational Titles.  (P's Brief at 6-10).

**Residual Functional Capacity Assessment**

The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite the claimant's impairments. 20 C.F.R. 404.1545.  The Eleventh Circuit has noted that the focus of an RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting medical consequences.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Plaintiff contends that the ALJ erred in determining that Plaintiff was "only limited to using his upper extremities for work above shoulder level," and failed to explain why he was not crediting multiple opinions in determining Plaintiff's RFC.  (P's Brief at 6).  The ALJ determined that Plaintiff retained the residual functional capacity for light work and was limited to "unskilled work, with a sit/stand option, no crawling, crouching, climbing, squatting, or kneeling, no use of lower extremity for pushing or pulling, and no use of upper extremities for work above the shoulder level."  (Tr. 24).  The ALJ stated that this RFC is "rather restrictive," but such a determination "is well supported by the subjective and objective evidence of record."  (Tr. 24).

The record contains two Physical Residual Functional Capacity Assessments

6

completed by reviewing physicians. One assessment was completed in October 2002 by Dr. Eric Puestow and the other was completed in April 2003 by Dr. Robert Wesly (Tr. 105-112, 139-146). On both forms the reviewing physicians found that Plaintiff's ability to reach in "all directions (including overhead)" was "limited." (*See* Tr. 108 and 142). Dr. Puestow's report from October 2002 underlines the word "overhead." (Tr. 108). Dr. Wesly's report from April 2003 notes "occ. (bilat)" in the blank beside the category of "[r]eaching all directions (including overhead)." Drs. Puestow and Wesly both came to nearly identical conclusions as to Plaintiff's physical limitations on reaching (Tr. 108, 142). The ALJ explained that although the opinions of reviewing physicians "do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this where there exist a number of other reasons to reach similar conclusions." (Tr. 23).

Plaintiff's treating physician, Dr. Rommelle Such, similarly found that Plaintiff had limitations with reaching. When completing a Treating Physician's Statement of Patient's Physical Limitations on December 1, 2003, Dr. Such checked the "yes" option in answer to the question, "Does your patient have significant limitations with reaching, handling or fingering?" (Tr. 211). Dr. B.S. Marathe, another of Plaintiff's treating physicians, also checked the "yes" option in answer to the same question on the form he completed in January 2004 (Tr. 218). Dr. Robert Dehgan, an examining physician, noted that Plaintiff stated that "his arms go numb if he holds them up too long." (Tr. 101). These medical findings are in concert with Plaintiff's testimony that he "wasn't able to drive" because he "couldn't keep [his] arms up." (Tr. 256-57). Plaintiff further testified that he was unable to complete a truck driving course because of pain and numbness in his arms (Tr. 256-57).

However, this limitation is accounted for in the RFC assessed by ALJ Dickinson. The ALJ's determination that Plaintiff would have no use of his arms above shoulder level adequately encompasses Plaintiff's limitation with his upper extremities. The RFC is supported by substantial evidence in the record, including the findings of three physicians and the Plaintiff's own testimony. Plaintiff's argument that the ALJ failed "to explain why he was not crediting multiple opinions (including that of the state agency medical expert) that [Plaintiff] was limited to occasional bilateral reaching in all directions" (P's brief at 6) is without merit. The ALJ weighed the reaching limitations assessed by the treating, examining and reviewing physicians and determined a RFC for Plaintiff in accord with those limitations.

**Medical Opinions of Plaintiff's Treating Physicians**

Generally, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580,583 (11th Cir. 1991); 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583. The ALJ is further "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

In this case, the ALJ rejected the opinion of Dr. Such as "not supported by the objective medical evidence," and that the doctor's reports failed to reveal any clinical or laboratory abnormalities and "did not specifically address any weakness." (Tr. 24). The ALJ stated that Dr. Such's opinion "departs substantially from the rest of the evidence of record." (Tr. 24). Similarly, the ALJ gave less weight to the opinion of Dr. Marathe because it was "without substantial support from the other evidence in the record," and Plaintiff was only seen by Dr. Marathe on two occasions. (Tr. 24).

The ALJ found Plaintiff limited to a significant range of light work with a sit/stand option, no crawling, crouching, climbing, squatting or kneeling, no use of lower extremity for pushing or pulling, and no use of upper extremities for work above the shoulder level (Tr. 24 & 28, Finding 11). More specifically, the ALJ found Plaintiff can lift and carry no more than 20 pounds at a time and 10 pounds frequently, can stand for 6 hours in an 8-hour workday, walk for 6 hours in an 8-hour workday, and sit for the remaining 2 hours in an 8-hour workday (Tr. 24, n.1).

In completing a Treating Physician's Statement of Patient's Physical Limitations (Tr. 207-211) on December 1, 2003, Dr. Such limited Plaintiff's strength demands to sitting 30 minutes at one time, standing 30 minutes at one time, and sitting/standing/walking to less than 2 hours in an 8-hour workday (Tr. 209-10). Dr. Such further indicated, by checking the option for "never," that Plaintiff could not lift and carry any amount of weight in a competitive work situation (Tr. 210).

Dr. Marathe completed a Physical Residual Functional Capacity Questionnaire on January 6, 2004 (Tr. 215-19). Dr. Marathe limited Plaintiff's sitting time at work to 30 minutes at one time, limited Plaintiff's standing to 10 minutes at one time, and found

9

Plaintiff capable of standing/walking less than 2 hours in an 8-hour workday and sitting about 2 hours in an 8-hour workday (Tr. 216-17).  Dr. Marathe also found Plaintiff could not lift and carry any amount of weight in a competitive work situation (Tr. 217).

The United States Court of Appeals for the Eleventh Circuit has concluded "good cause" exists to discount the opinion of a treating physician when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or, (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004).  When the ALJ disregards the opinion of a treating physician, the reasons for doing so must be clearly articulated. *Id.*  The Eleventh Circuit has found no error exists where the ALJ has articulated specific reasons for failing to give a treating physician's opinion controlling weight.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

As noted earlier, it is evident the ALJ considered all the limitations that Plaintiff's physicians indicated in their reports.  When weighing the strength limitations, stated by Plaintiff's treating physicians, against the other evidence of record, the ALJ noted a lack of significant clinical and laboratory abnormalities and a reliance by the doctors on subjective reports of symptoms and limitations provided by the Plaintiff.  The ALJ considered the nature of the relationships and the length of treatment Plaintiff had with the treating physicians.  The Court finds  no error in the ALJ's determination regarding the reports of Dr. Such and Dr. Marathe.  Here, the ALJ adequately articulated specific justification for discounting the treating physicians' opinions in this regard.

Plaintiff, however, also takes issue with the ALJ's treatment of Dr. Robert Dehgan's consultative exam report (P's Brief at 10-11).  Plaintiff asserts that Dr. Dehgan's opinion

"is based on a fundamental misreading or mischaracterization of the February 2022 MRI results." (P's Brief at 11). Dr. Dehgan examined Plaintiff on September 30, 2002 and prepared an extensive report outlining the results of his examination and his review of the MRI report of the cervical spine done on February 4, 2002. Dr. Dehgan's examination of Plaintiff is closer in time to the MRI test than the two reports completed by Plaintiff's treating physicians. Dr. Dehgan stated that his review of the February 2002 MRI report shows "minimal degenerative changes, not unusual for age." (Tr. 104).

Dr. Dehgan is a board certified physician who practices physical medicine and rehabilitation, electrodiagnostic medicine, and spine and sports medicine (Tr. 100). Further, Dr. Dehgan is a Diplomat of the American Board of Physical Medicine and Rehabilitation, a Fellow of the American Academy of Physical Medicine and Rehabilitation, is Board-Qualified in Orthopedic Surgery, and is a Member of the American Academy of Disability Evaluating Physicians (Tr. 104). Dr. Dehgan practices medicine and performs surgery wherein back and spine injuries and diseases are commonplace. The Court finds no error in the ALJ's acceptance of Dr. Dehgan's interpretation of Plaintiff's MRI test results.

**Asserted Conflict Between VE Testimony and Dictionary of Occupational Titles**

Plaintiff's argument on this issue centers on the ALJ's reliance on the vocational expert's testimony concerning the jobs identified as those in the national economy which Plaintiff could perform. Plaintiff asserts he is limited to jobs with reasoning abilities under level one, as defined in the Dictionary of Occupational Titles ("DOT"). (P.'s Brief at 18-20). The Court is not convinced.

Plaintiff correctly cites that the occupation of toll collector is associated with the

general educational development reasoning level of three, and the occupation of parking lot attendant is associated with a general educational development reasoning level of two. The DOT indicates that under level three reasoning one would need only "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* I United States Dep't of Labor, *Dictionary of Occupational Titles* § 211.462-038 (4th ed. 1991) (Toll Collector). Occupations with level two reasoning entail the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See* II United States Dep't of Labor, *Dictionary of Occupational Titles* § 915.473-010 (4th ed. 1991) (Parking-Lot Attendant).

Plaintiff argues that the occupations suggested by the vocational expert (VE) require a greater level of reasoning under the DOT than Plaintiff currently possesses (P's Brief at 20). Plaintiff contends that the VE testimony "clearly conflicts" with the DOT and urges the case be remanded to resolve the conflict (P's Brief at 20). *Also see Burns v. Barnhart*, 312 F.3d 113, 127 (3rd Cir. 2002) (case was remanded to address obvious conflict between VE testimony and DOT requirements for medium semi-skilled work versus light unskilled work limitation in hypothetical); SSR 00-4p 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) ("When there is an apparent unresolved conflict between the VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict. . . ").

As discussed above, the Court has found ALJ Dickinson properly evaluated the

medical evidence and Plaintiff's testimony and accorded proper weight to the objective and subjective evidence of record.  The ALJ's RFC assessment is based on substantial evidence.  There does not appear to be any conflict between the reasoning requirements of the referenced jobs and the RFC assessed in this case.

With regard to Plaintiff's actual RFC, the ALJ stated he limited Plaintiff "to unskilled work to accommodate his depression as well as the side effects of his medications" (Tr. 25).  In the hypothetical posed by ALJ Dickinson, the VE was asked to consider "[t]he job would be unskilled involving simple operations." (Tr. 266).  In his decision, the ALJ further stated, "In this case, the claimant has demonstrated the ability to perform all of the mental activities generally required by competitive, remunerative, unskilled light work." (Tr. 25). The ALJ's finding corresponds to at least level two and level three reasoning specifications.  The jobs identified by the VE have reasoning levels of two and three, and are thus consistent with Plaintiff's ability to perform.

## CONCLUSION

For the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 24th  day of September, 2007.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
Counsel of Record